Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| OFICINA DE LA PROCURADORA DE LAS MUJERES; CRYSTAL J. FONSECA<br><br>Recurrida<br><br><br>v.<br><br><br>DEPARTAMENTO DE LA FAMILIA<br><br>Recurrente | KLRA202400399 | Revisión Judicial Procedente de la Oficina de la Procuradora de las Mujeres<br><br>Caso Núm.: OPM-Q-2022-12<br><br>Sobre:<br>Ley Núm. 20-2001, Ley de la Oficina de la Procuradora de las Mujeres, según enmendada; Ley Núm. 427-2000, Ley para Reglamentar el Periodo de Lactancia o de Extracción de Leche Materna; Ley Núm. 155-2002, Ley de Espacios para la Lactancia en Entidades Públicas; y Ley Núm. 212-1999, Ley para Garantizar la Igualdad de Oportunidades en el Empleo por Género |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

El 24 de julio del año en curso, el Departamento de la Familia (en adelante, el Departamento o la parte recurrente) acudió ante este Tribunal de Apelaciones mediante el recurso de *Revisión Judicial* de epígrafe. En su escrito, solicita la revocación de la *Resolución Final* emitida en la causa de epígrafe con fecha del 22 de mayo de 2024. Por virtud de esta, la Oficina de la Procuradora de las Mujeres encontró que el Departamento no le proveyó a la Sra. Crystal J. Fonseca, empleada de la parte recurrente, un lugar seguro, privado e higiénico para lactar, en violación de las disposiciones de

la Ley para Reglamentar el Periodo de Lactancia o de Extracción de Leche Materna, 29 LPRA sec. 478, *et seq.* (en adelante, Ley 427-2000).

Examinados los argumentos sometidos ante nuestra consideración por el Departamento y los documentos que acompañaron su recurso, resolvemos.

-I-

El 4 de octubre de 2022, la Sra. Crystal J. Fonseca Caraballo (en adelante, la señora Fonseca presentó en la Oficina de la Procuradora de las Mujeres (en adelante, la OPM) una *Querella* en la que alegó lo siguiente:

> En resumen, comencé a laborar para el Departamento de la Familia en la Administración de Familias y Niños, Oficina Local de Naguabo en la Región de Humacao el 18 de enero de 2022. Desde esa fecha no se me proveyó un lugar seguro, privado e higiénico, según lo establece la Ley 427 de 16 de diciembre de 2000, según enmendada. Se realizaron gestiones para que se corrigiera lo antes señalado y no se cumplió. Por esta razón me vi obligada a tener que extraerme la leche materna en mi vehículo de motor y luego de un incidente, donde estuve expuesta a ser vista en el proceso de extracción tuve que dejar de extra[é]rmela. A causa de esto, mi producción de leche materna disminuyó y en contra de mi voluntad tuve que comenzar a alimentar a mi hija con leche de fórmula, toda vez que esto provocó que mi banco de leche materna se acabara. Decidí buscar ayuda psicológica ya que al ver a mi hija buscando el pecho desesperada ante la baja producción llegué a sufrir depresión. Toda esta situación me llevó a sentirme frustrada, desesperada y en tensión.[1]

Llevado a cabo el trámite procesal correspondiente,[2] la vista administrativa en su fondo se celebró el 6 de noviembre de 2023. Tras esta, y con fecha del 7 de mayo de 2024, la Lcda. María I. Almodóvar Laborde, Oficial Examinadora que atendió el caso, emitió su *Informe Final*. En este, formuló ochenta y cinco (85) determinaciones de hechos. Basándose en estas, la Oficial Examinadora encontró que no había duda de que cuando la señora Fonseca comenzó a trabajar para el Departamento, informó que era madre lactante y solicitó que se designara un área para llevar a cabo la

---

[1] Como remedio, en su *Querella* la recurrida solicitó que el DF cumpliera con la Ley 427-2000 y desistiera de violentar sus derechos como madre lactante.

[2] El Apéndice del recurso revela que, durante el trámite, se emitió una *Resolución Parcial* para archivar las multas propuestas, dejándose pendiente de atender la compensación que el Artículo 9 de la Ley 427-2000, *supra,* dispone. El Apéndice también demuestra que se celebró descubrimiento de prueba en el caso.

extracción de leche materna. Así pues, y en virtud de los testimonios vertidos durante la vista administrativa, la Oficial Examinadora encontró probado que la parte recurrente conocía que la recurrida era madre lactante, que no le negó los periodos para la extracción de leche materna y que estaba al tanto de que la sala de lactancia o extracción de leche materna designada por el Departamento no cumplía con los requisitos de ley.

De igual forma, y conforme a los testimonios recibidos, la Oficial Examinadora determinó que la señora Fonseca no tuvo a su disposición una sala o espacio de lactancia en la Oficina Local del Departamento en Naguabo por espacio de setenta (70) días,[3] mientras fue destacada por el Departamento en su Oficina del Departamento en Culebra durante las siguientes siete (7) fechas: Marzo 21; Abril 5; Mayo 17; y Junio 2, 9, 14 y 27 del año 2022. A su vez, estableció que de la prueba recibida, surgía que la recurrida no tuvo disponible un área segura, higiénica y adecuada para los días 11, 13 y 17 de octubre de 2022. Habiéndose determinado lo anterior, la Oficial Examinadora procedió a manifestar lo siguiente:

> Es forzoso concluir, que, desde el 20 de enero de 2022, y según los testimonios vertidos durante la vista adjudicativa y la prueba documental, los directivos de la oficina regional de Naguabo del Departamento de la Familia, la Sra. Johana Pérez Maldonado, la Sra. Jennifer Rivera Santiago y la Sra. Wilmary Gómez, tenían conocimiento personal de que la Sra. Fonseca era madre lactante, y que necesitaba un espacio o lugar para extraerse la leche materna. También y de conformidad con los correos electrónicos enviados entre ellos, sabían de la naturaleza de las condiciones en que se encontraba el cuarto de lactancia de la Oficina del Departamento de la Familia en Naguabo y de Culebra y, por ende, sabían que el mismo no era adecuado, privado, seguro e higiénico.
>
> Todo patrono tiene el deber de proveer un área segura, higiénica y adecuada a las empleadas que sean madres lactantes. El Departamento de la Familia incumplió con ese deber y obligación que le impone la ley. El Departamento, luego de las inspecciones realizadas por la investigadora de la OPM, le proveyó a la Sra. Fonseca un lugar para la extracción en la oficina local de Naguabo y en la oficina local de Culebra. Sin embargo, la limpieza de la oficina local de Naguabo era deficiente y no era consistente, tal y como impone la Ley Núm. 247-2000, *supra*. En múltiples ocasiones,

---

[3] Las fechas específicas determinadas para cada uno de los siguientes meses del año 2022 son: Enero: 20, 28 y 31; Febrero: 1, 2, 3, 4, 8, 14, 15, 16, 17, 18, 22, 23, 24, 25 y 28; Marzo: 4, 8, 9, 11, 16, 17, 18, 24, 25, 28, 29, 30 y 31; Abril: 4, 6, 11, 12, 13, 18, 20, 21, 26, 27, 28 y 29; Mayo: 4, 5, 9, 10, 11, 12 y 31; Junio: 1, 3, 6, 7, 8, 23 y 30; Julio: 1, 6, 11, 12, 13, 15, 18, 21, 22 y 26; y Octubre:, 11, 13 y 17.

la Sra. Fonseca tenía que llevar sus propias toallas desinfectantes y limpiar las superficies donde iba a poner los materiales y la máquina de extracción en el cuarto de lactancia para así evitar que su leche materna se fuera a contaminar.

El permitir que una madre lactante realizara sus extracciones de leche materna en lugares como los antes descritos demuestra la falta de respeto, consideración y violación a los derechos de la madre lactante y de su hijo por parte del Departamento de la Familia de Puerto Rico. El Departamento de la Familia no presentó prueba alguna que derrotara la credibilidad de los testimonios de la querellante y de la inspectora de la OPM. Al contrario, los propios testimonios de sus testigos demostraron que el Departamento de la Familia tenía pleno conocimiento que la querellante era madre lactante y las condiciones en que se encontraba el cuarto de lactancia en la oficina local de Naguabo como en la de Culebra.

Acto seguido, la Oficial Examinadora determinó que procedía en favor de la señora Fonseca una compensación de $27,373.50. Basó tal suma en consideración del horario de trabajo de la Querellante, el sueldo de $2,370.00 mensuales que esta devengó para los meses de enero a octubre de 2022 y la evidencia recibida. El 22 de mayo de este año, la OPM emitió *Resolución Final* mediante la que acogió en su totalidad el informe de la Oficial Examinadora, así como las recomendaciones allí brindadas.

Inconforme con lo resuelto, el Departamento sometió *Moción de Reconsideración de Resolución Final.* En la misma, al igual que hace en su recurso de revisión, negó que la señora Fonseca tuviera derecho a la compensación establecida en la Ley 427-2000. Asimismo, y sin renunciar a lo antes señalado, impugnó la cantidad concedida en compensación, así como alegó que la Oficial Examinadora permitió que se enmendaran las alegaciones de la querella, a pesar de la objeción que levantó oportunamente. Por último, reclamó errado el imponérsele responsabilidad por no efectuar reparaciones que debía hacer la Autoridad de Edificios Públicos por lo que, en el peor de los casos, es dicha agencia quien debió responder económicamente.

El 19 de junio del año en curso, el Departamento emitió *Resolución Final sobre Reconsideración* mediante la cual denegó la reconsideración

solicitada. En desacuerdo aun, la parte recurrente instó el recurso de revisión judicial y señaló la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR**: ERRÓ LA PROCURADORA INTERINA AL DETERMINAR QUE LA RECURRIDA TENÍA DERECHO A LOS BENEFICIOS DE LA LEY NÚM 427-2000, SIN CUMPLIR CON LOS REQUISITOS DEL PRECITADO ESTATUTO Y EL REGLAMETNO NÚM. 7317.

> **SEGUNDO SEÑALAMIENTO DE ERROR**: ERRÓ LA PROCURADORA INTERINA AL ACOGER EL CÁLCULO DE LA COMPENSACIÓN QUE ALEGADAMENTE LE CORRESPONDE PAGAR AL DF A LA RECURRIDA, AL SER UN CÓMPUTO INCORRECTO.

> **TERCER SEÑALAMIENTO DE ERROR**: ERRÓ LA OFICIAL EXAMINADORA AL PERMITAR QUE SE ENMENDARAN LAS ALEGACIONES DE LA QUERELLA EN CONTRAVENCIÓN CON LO DISPUESTO EN EL REGLAMENTO NÚM. 7317 Y EL DEBIDO PROCESO DE LEY.

> **CUARTO SEÑALAMIENTO DE ERROR**: ERRÓ LA PROCURADORA INTERINA AL IMPONER RESPONSABILIDAD AL DF, CUANDO LAS REPARACIONES NECESARIAS LE CORRESPONDÍAN A LA AUTORIDAD DE EDIFICIOS PÚBLICOS.

Atendido el recurso, el 15 de agosto de 2024, emitimos *Resolución* en la que establecimos que la parte recurrida debía someter su postura dentro del término establecido en nuestro Reglamento o, de lo contrario, dispondríamos del recuro sin el beneficio de su comparecencia. Habiendo solicitado la OPM una prórroga para ello, el 21 de agosto de 2024, concedimos el plazo requerido.

El 23 de septiembre de 2024, emitimos *Sentencia.* En esa misma fecha, a las 4:58 p.m., la OPM sometió *Moción al Expediente Judicial y en Solicitud de Reconsideración al Amparo de la Regla 84 del Reglamento del Tribunal de Apelaciones*, en la cual incluyó como parte de sus anejos un documento titulado *Oposición A: Recurso de Revisión Administrativa*. El 24 de septiembre de 2024, emitimos *Resolución* en la que declaramos Con Lugar la reconsideración sometida por la OPM y dejamos sin efecto nuestro previo dictamen. Con la comparecencia de todas las partes, procedemos a resolver.

-II-

*A.*

Es norma hartamente conocida y reiterada en nuestro ordenamiento jurídico que los foros apelativos deben conceder amplia deferencia a las decisiones administrativas debido a la experiencia y pericia que estos organismos, presumiblemente tienen respecto a las facultades que se les han delegado. Otero Rivera v. Bella Retail Group, Inc., 2024 TSPR 70, 213 DPR ____, al citar a Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019) y Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial que las disposiciones de dicha ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión.[4] Asimismo, la Sección 4.2 de la LPAU establece que la parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final.[5]

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Capote Rivera v. Voili Voila Corporation, 2024 TSPR 29, 213 DPR ____, al citar a Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). Al ejercer la revisión judicial, los tribunales

---

[4] 3 LPRA Sec. 9671
[5] 3 LPRA Sec. 9672.

no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Íd.,* al citar a Otero v. Toyota, 163 DPR 716, 729 (2005). Ello así, puesto a que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección por su vasta experiencia y conocimiento especializado y, conforme ya citamos, merecen deferencia por parte de los foros judiciales. *Íd.*

Ahora, la deferencia antes mencionada no es absoluta. Capote Rivera v. Voili Voila Corporation, *supra.* Así pues, los tribunales no pueden, bajo el pretexto de deferencia a las determinaciones administrativas, imprimirle un sello de corrección a aquellas interpretaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Íd.,* al mencionar a Graciani Rodríguez v. Garage Isla Verde, *supra.* Por ello, la deferencia a las decisiones administrativas debe ceder cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021).

*B.*

Mediante la aprobación de la Ley Núm. 427 de 16 de diciembre de 2000, según enmendada, conocida como "*Ley para Reglamentar el Período de Lactancia o de Extracción de Leche Materna*", 29 LPRA sec. 478 *et seq.*, nuestra Asamblea Legislativa reconoció la política pública del Departamento de Salud en representación del Gobierno de Puerto Rico de promover la lactancia materna en Puerto Rico. Con tal propósito, mediante el referido

estatuto se le otorgó a la mujer trabajadora en Puerto Rico, tanto en la empresa privada como en el Gobierno, sus instrumentalidades, municipios y corporaciones públicas, un período de lactancia o extracción de leche materna. [6]

Así pues, el Artículo 7 de la ley 427-2000, obliga al patrono a garantizar a la madre lactante que así lo solicite, el derecho a lactar a su criatura o extraerse la leche materna. El Artículo 3 del mismo estatuto, por su parte, establece la duración del periodo de lactancia y describe las garantías mínimas que el espacio que se habilite para la extracción de leche materna. Sobre esto, el mencionado artículo dispone los siguiente:

> Por la presente se reglamenta el período de lactancia o extracción de leche materna, proveyéndole a las madres trabajadoras que se reintegran a sus labores, después de disfrutar su licencia por maternidad, que tengan la oportunidad de lactar a su criatura durante una hora dentro de cada jornada de tiempo completo, que puede ser distribuida en dos periodos de treinta (30) minutos cada uno o en tres períodos de veinte (20), para acudir al lugar en donde se encuentra la criatura a lactarla, en aquellos casos en que la empresa o el patrono tenga un centro de cuido en sus facilidades o para extraerse la leche materna en el lugar habilitado a estos efectos en su taller de trabajo. Dichos lugares deberán garantizar a la madre lactante privacidad, seguridad e higiene. El lugar debe contar con tomas de energía eléctrica y ventilación. Si la empleada está trabajando una jornada de tiempo parcial y la jornada diaria sobrepasa las cuatro (4) horas, el periodo concedido será de treinta (30) minutos por cada periodo de cuatro (4) horas consecutivas de trabajo.
>
> En el caso de aquellas empresas que sean consideradas como pequeños negocios de acuerdo a los parámetros de la Administración Federal de Pequeños Negocios (SBA, por sus siglas en inglés), éstas vendrán obligadas a proveer a las madres lactantes un período de lactancia o extracción de leche materna de al menos media (1/2) hora dentro de cada jornada de trabajo a tiempo completo que puede ser distribuido en dos periodos de quince (15) minutos cada uno. Si la empleada está trabajando una jornada de tiempo parcial y la jornada diaria sobrepasa las cuatro (4) horas, el periodo concedido será de treinta (30) minutos por cada periodo de cuatro (4) horas consecutivas de trabajo.

El periodo de lactancia o de extracción de leche materna reconocido por la Ley 427-2000 tiene una duración máxima de 12 meses a partir del regreso de la madre trabajadora a sus funciones.[7] Si un patrono niega el

---

[6] Exposición de Motivos de la Ley 427-2000.
[7] 29 LPRA Sec. 478b.

derecho de lactar o extraerse leche materna a una madre lactante, esta podrá exigir que se le garantice su derecho. Los foros con jurisdicción para atender el reclamo podrán imponer una multa al patrono que no garantice el derecho de lactancia o extracción de leche materna. Esta multa, podrá ser igual a 3 veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse la leche materna o una cantidad no menor de tres mil (3,000) dólares, lo que sea mayor.[8]

## C.

La Regla 104 de las Reglas de Evidencia, establece los aspectos procesales para el ofrecimiento, admisibilidad o exclusión de la evidencia, 32 LPRA. Ap. VI, R. 104. En concreto, la regla dispone que:

(A) Requisito de objeción

La parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad. Si el fundamento de la objeción surge claramente del contexto del ofrecimiento de la evidencia, no será necesario aludir a tal fundamento.

(B) Oferta de prueba

En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.

El Tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El Tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.

(C) Objeción u oferta de prueba continua

Una vez el Tribunal dicta una resolución definitiva en el récord, para admitir o excluir prueba, ya sea antes o durante el juicio, una parte no tiene que renovar una objeción u oferta de prueba para conservar su derecho a plantear el asunto en apelación.

---

[8] 29 LPRA Sec. 478h

Sobre el efecto que tendrá el error en la admisión o exclusión de evidencia, la Regla 105(A) de las de Evidencia, 32 LPRA. Ap. VI, R. 105(A), dispone lo siguiente:

> No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:
>
> (1) la parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 y
> (2) el Tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.

De acuerdo con las disposiciones de las reglas mencionadas anteriormente, el foro apelativo debe determinar "si la evidencia en controversia, la cual fue erróneamente admitida sobre la oportuna y correcta objeción de la parte perjudicada por la misma, fue o no un factor decisivo o sustancial en el resultado del caso; esto es, si dicha evidencia pudo haber tenido una influencia, notable y determinante, en el veredicto, fallo, o sentencia que emitiera el juzgador de los hechos en el caso ante su consideración, fuera éste civil o criminal". Pueblo v. Ruiz Bosch, 127 DPR 762, 787-788 (1991).

**-III-**

En su recurso, como primer señalamiento de error, el Departamento establece que la imposición de una multa por violación a las disposiciones de la Ley 427-2000 en el caso de epígrafe es improcedente en derecho. En la discusión de dicho error, al igual que hizo ante la OPM al solicitar reconsideración del dictamen recurrido, la parte recurrente niega que la señora Fonseca tenga derecho a la compensación establecida en la Ley 427-2000 por dos razones.

En primer lugar, expone que de acuerdo con las disposiciones de la Ley 427-2000, como patrono debe garantizar a toda madre lactante el derecho a lactar a su criatura o extraerse la leche materna, siempre que la madre lactante así lo solicite y presente la correspondiente certificación

médica que acredite su condición de madre lactante. Segundo, expone que el *Reglamento para Establecer las Normas que Salvaguarden el Derecho de Toda Madre Trabajadora del Departamento de la Familia a un Área o Espacio Físico Designado y Apropiado para la Lactancia o Extracción de Leche Materna* (Reglamento 7317) impone a toda madre lactante que reclame sus derechos el requisito adicional de someter la petición por escrito mediante el formulario de *Solicitud de Periodo de Lactancia o Extracción de Leche,* el que debe acompañarse con la certificación médica.

Ante lo señalado, el Departamento discute que en la situación de hechos ante nos aunque la señora Fonseca comenzó a trabajar para el Departamento el 18 de enero de 2022, no fue hasta el 31 de marzo del mismo año que sometió su petición **por escrito**. No obstante, señala que en ese momento la señora Fonseca no proveyó la certificación médica que la acreditara como madre lactante, por lo que nunca advino acreedora de derecho alguno bajo la Ley 427-2000, al incumplir con los requisitos de esta. Reclama, que los hechos del caso lo que demuestran es que la Oficina Local de Naguabo del Departamento, "dentro de su buena fe, realizó l[o]s cambios y [las] mejoras necesarias para proveer un espacio seguro, privado e higiénico a la señora Fonseca, independientemente de que la misma haya solicitado o no su derecho según dispone la Ley 427-2000, *supra*."

En su comparecencia, la OPM acepta que la Ley 427-2000, *supra,* establece que la madre lactante que desee solicitar su periodo de extracción de leche materna deberá presentar una certificación médica a esos efectos. No obstante, niega que la misma constituya un requisito indispensable para que esta pueda gozar los derechos que en virtud del aludido estatuto le cobijan. A su vez, reclama que el Departamento no puede utilizar el incumplimiento de la señora Fonseca con las disposiciones de su reglamentación interna, cuando de la evidencia presentada durante la vista administrativa quedó evidenciada el inadecuado manejo de su caso.

Al estudiar el *Informe Final* emitido en el caso y atender este primer señalamiento, advertimos que la recomendación para la imposición de una multa descansó en la prueba oral y documental que se presentó en la vista administrativa celebrada en el caso.[9] Vemos que, basándose en esta evidencia, la Oficial Examinadora encontró probado, entre otras cosas:

- que desde que la señora Fonseca comenzó a trabajar para el Departamento, informó **verbalmente** que era una madre lactante y que tenía intenciones de utilizar el periodo de lactancia o de extracción de leche materna por lo que requería un espacio para ello;

- que el espacio designado en la Oficina Local de Naguabo del Departamento para lactancia o extracción de leche materna y ofrecido a la señora Fonseca no cumplía con los requisitos de Ley;

- que tal espacio era un cubículo que tenía una cortina de tela traslucida que fungía como puerta, que no estaba limpio, que era utilizado por otros empleados para tomar sus periodos de almuerzo, calentar sus alimentos y guardar alimentos y bebidas en la nevera;

- **que el Departamento nunca le negó a la señora Fonseca el periodo para extraerse leche materna;**

- que para cada una de las fechas determinadas la señora Fonseca no pudo extraerse la leche materna por falta de un lugar seguro, privado e higiénico en el que pudiera hacerlo; y

- que, debido a la inacción y lentitud del Departamento para proveerle un lugar adecuado para extraerse la leche materna, la producción de leche de la señora Fonseca se vio afectada, padeciendo de mucho dolor en los senos, manchándosele en muchas ocasiones la ropa con leche materna por no podérsela extraer.

El Departamento no niega estos hechos, si no que más bien centra su argumento en que la señora Fonseca no tiene derecho a recibir compensación alguna pues al comenzar a trabajar no sometió **por escrito** su solicitud conforme exige su reglamento interno, y que, en ningún momento, proveyó la certificación médica que acreditara su condición de madre lactante.

---

[9] Tal hecho queda confirmado por la *Resolución Final en Reconsideración* expedida por la OPM el 19 de junio de 2024. Allí, claramente s establece que la *Resolución* se basó en el testimonio y la prueba presentada en la vista adjudicativa.  Véase pág. 56 de Apéndice.

A nuestro parecer, el argumento del Departamento es insostenible y contrario a la política pública que promueve la Ley 427-2000, *supra*. Peor aún, este ignora por completo los actos propios que, **basándose en la prueba oral y documental**, la Oficial Examinadora determinó el Departamento llevó a cabo para reconocerle a la señora Fonseca el periodo para extraerse leche materna, así como para proveerle un espacio adecuado para ello.[10]

Según arriba resaltamos, las decisiones administrativas están revestidas de una presunción de regularidad y corrección que debe sostenerse a menos que sean irrazonables, ilegales o contrarias a derecho. Tal presunción, como dijimos, deberá sostenerse a menos que se señale evidencia en contrario que obre en el expediente administrativo.

En el presente caso, la Oficial Examinadora determinó- **basándose en el testimonio de la señora Fonseca**- que las acciones del personal de la Oficina Local de Naguabo del Departamento, así como el reconocimiento de un periodo de extracción de leche en favor de esta, demostraban sin duda alguna que el Departamento conocía que la señora Fonseca era madre lactante desde que comenzó a trabajar en su oficina de Naguabo. El Departamento no nos señaló prueba alguna que controvierta esta conclusión. Tampoco derrotó los hechos determinados por la Oficial Examinadora. Por consiguiente, al circunscribir nuestra función revisora a los criterios discutidos antes en la presente sentencia, estamos convencidos de que la decisión de la OPM es merecedora de nuestra deferencia. Ante esta realidad, resolvemos que el primer error no fue señalado. Adelantamos

---

[10] Las determinaciones de hechos formuladas por la Oficial Examinadora, así como alguna de las expresiones hechas mientras disponía de la controversia, establecen reuniones entre la señora Fonseca y personal supervisor relacionado a su periodo de lactancia, así como reclamos por parte de dicho personal a las oficinas centrales en cuanto a la condición del cuarto de lactancia. Estas determinaciones, según en varias veces menciona la Oficial Examinadora, surgen del testimonio de la señora Fonseca, el cual le mereció entera credibilidad. Debido a que no contamos con una transcripción de la prueba oral vertida durante la audiencia celebrada ante la Oficial Examinadora, estamos impedidos de evaluarlas. Igual impedimento encontramos frente al resto de los hechos que la Oficial Examinadora encontró probados y que fueron acogidos por la OPM.

que igual conclusión alcanzamos en cuanto al tercer y cuarto señalamiento de error del Departamento.

En el tercero de sus señalamientos la parte recurrente afirma que constituyó una violación al debido proceso de ley el que equivocadamente se le permitiera a la señora Fonseca enmendar sus alegaciones. Específicamente, plantea que la querella que esta sometió solamente menciona hechos referentes a la Oficina Local de Naguabo más, sin embargo, y pese a una alegada oportuna oposición por el Departamento, se le permitió incluir en el Informe de Conferencia con Antelación al Juicio y en la vista administrativa, alegaciones y prueba referente a las oficinas de Culebra y Vieques.

Por su parte, en su cuarto error, la parte recurrente sostiene que la entidad gubernamental autorizada y obligada en ley para realizar los arreglos necesarios para que el espacio designado como cuarto de lactancia y extracción de leche materna, cumpla con las disposiciones de la Ley 427-2000, *supra*, es la Autoridad de Edificios Públicos. Ante este hecho, reclama que al ser atribuible a esta entidad cualquier falta o demora, es dicha agencia a quien debe imponérsele el pago de cualquier compensación dada en el caso. No tiene razón en ninguno de estos planteamientos.

Sobre los asuntos levantados por el Departamento en su tercer error, al comparecer la OPM rechaza el reclamo de violación a un debido proceso de ley levantado por el Departamento. Apunta a que este no puede pretender que queden excluidos los incidentes ocurridos en otros lugares distintos a las oficinas del Departamento en Naguabo, pues la señora Fonseca ejercía en todos los lugares funciones como empleada del Departamento. Mientras, y en torno a aquellos discutidos sobre el cuarto error, establece que la responsabilidad que impone la Ley recae en el patrono de la madre lactante, quien está llamado a proveer un espacio

adecuado, higiénico y privado; cosa que el Departamento no hizo en el presente caso.

En cuanto al tercer error, es menester resaltar que, como correctamente le explicó la OPM a la parte recurrente al atender su solicitud de reconsideración, el Departamento es un ente; **uno solo**. Este, es el patrono de la señora Fonseca y quien designó a la señora Fonseca mientras reconoció su derecho al periodo de extracción de leche materna a trabajar en distintas localidades. Raya en lo absurdo el catalogar como tardía o sorpresiva cualquier alegación referente a las oficinas locales de Culebra y Vieques cuando es el propio Departamento quien la asignó a cumplir con sus funciones en dichos lugares.[11]

Igual de irrazonable es el planteamiento levantado por el Departamento en su cuarto error. La Ley 427-2000, *supra*, impone unos requisitos de fácil cumplimiento, "si el patrón está realmente dispuesto a colaborar con su empleada para proveerle un espacio limpio, privado y seguro para extraerse leche materna."[12] Quien viene obligado a garantizar el derecho que el mencionado estatuto reconoce a las madres lactantes trabajadoras es el patrono de éstas. Es por consiguiente, el Departamento el único responsable en el presente caso de las consecuencias de no haber cumplido con sus disposiciones. No puede pretender desligarse de su responsabilidad alegando que le correspondía a una agencia gubernamental distinta realizar instalaciones y reparaciones.

En fin, un estudio sopesado del expediente administrativo nos mueve a concluir que la determinación administrativa impugnada mediante el tercer y cuarto señalamiento merece nuestra deferencia.

---

[11] Aunque el Departamento indica en la discusión del error que durante la vista objetó oportunamente la pretensión de la señora Fonseca de enmendar las alegaciones, una vez más señalamos que no contamos con el beneficio de una transcripción de los procedimientos acaecidos durante la vista administrativa del caso. Debido a ello, no solo la parte recurrente no nos ha colocado en posición de evaluar la prueba que según alega fue erróneamente admitida, sino que ni siquiera podemos tener constancia de que en efecto la oportuna, específica y correcta objeción durante el testimonio de la señora ocurrió.
[12] Siaca v. Bahia Beach Resort, 194 DPR 559, 591 (2016).

Ahora bien, coincidimos con el Departamento en cuanto al error en el cálculo efectuado por la OPM para la imposición de la multa, más no con la cantidad que señala debe imponerse en pago. Veamos. Al discutir su segundo error, la parte recurrente señaló que la Oficial Examinadora no explicó el cálculo o la fórmula utilizada para determinar que el salario diario de la señora Fonseca era o debía ser $118.50. El expediente solo establece que para llegar a dicha cantidad se consideró el horario de trabajo de la Querellante, el sueldo de $2,370.00 mensuales que esta devengó para los meses de enero a octubre de 2022 y la evidencia recibida.

El artículo 9 de la Ley 427-2000, *supra,* establece como compensación en favor de toda madre lactante a quien su patrono le niegue el periodo reconocido en el estatuto: (1) tres veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse la leche materna o; (2) una cantidad no menor de tres mil (3,000) dólares, lo que sea mayor. Siendo ello así, tal como aduce la parte recurrente, si multiplicamos el salario mensual de la señora Fonseca por la cantidad de meses del año (12), tenemos que su ingreso anual es de $28,440.00. Este número, al ser dividido por la cantidad de semanas que tiene un año (52), resulta en un salario semanal de $546.92. Si a su vez dividimos este ingreso semanal por la cantidad de días laborales que hay en una semana (5), vemos que el ingreso diario de la señora Fonseca es $109.38. Esta suma, al ser multiplicada por los días 80 días de incumplimiento que se determinaron,[13]

---

[13] El Departamento niega responsabilidad por cualquier incumplimiento señalado en fechas posteriores a 24 de agosto de 2022. No obstante, surge del expediente que luego de tal día a la señora Fonseca se le continuaba reconociendo el derecho a un periodo para extracción de leche materna. Notamos que las fechas mencionadas en el Informe Final luego de ese día, están dentro del periodo de 1 año que la Ley 427-2000 reconoce. La Oficial Examinadora determinó que, conforme a la prueba, la razón por la cual la señora Fonseca puso esta fecha como el término de vencimiento, se debió a la falta de una adecuada orientación por parte del personal supervisor que le hizo entrega del formulario. Como hemos mencionado ya en varias ocasiones, no tenemos ante nos una reproducción de la prueba oral que nos permita evaluar las determinaciones alcanzadas, por lo que no intervendremos en el número de días que se determinó el Departamento violentó los derechos de la señora Fonseca a extraerse leche materna.

resulta en que el Departamento debe pagarle a la señora Fonseca la cantidad de $26,251.20 y a esos únicos fines modificamos el dictamen recurrido.

**-IV-**

Por las razones antes consignadas, **modificamos** la determinación recurrida a los efectos de reducir la cantidad a ser pagada por el Departamento a $26,251.20. Así modificado se confirma.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones